JACKSON, *ex dem.* FOLLIARD and WALLACE, *against* WRIGHT.

ALBANY,
February 1809.

Jackson
v.
Wright.

THIS was an action of ejectment, for an undivided moiety of Lot no. 12. in the town of *Hector.* The cause was tried at the *Seneca Circuit,* before Mr. *Justice Spencer,* the 27th *June,* 1808; when a verdict was taken for the plaintiff, subject to the opinion of the court, on the following case.

The plaintiff produced in evidence, an *award* of two of the *Onondaga commissioners,* awarding an undivided moiety of the lot to *Wallace,* on the 12th *April,* 1800, which was duly entered in a book, filed in the clerk's office, and to which award no dissent was entered. The defendant was admitted to be in possession.

The defendant then gave in evidence a patent to *Folliard,* dated 8th *July,* 1790, and a deed from *Folliard,* to *Abraham Nelson,* dated 5th *August,* 1784. *Nelson* left *Ireland* about the year 1778, or 1779, for the *United States,* and died about the year 1798, in *New-York,* without issue. He left a brother and three sisters, living in *Ireland,* who are *aliens,* and still alive. *Lydia,* one of the sisters, married *John Henry,* also an *alien,* before the death of *Abraham.* The defendant, also gave in evidence, an act of the legislature of this state, passed 3d *April,* 1804, for the relief of *John Henry,* and *Lydia* his wife; and by which it was enacted, that all the real estate of which *Abraham Nelson* died seised, should be vested in the said *Lydia,* and her heirs in like manner, as if she had been a citizen, at the death of her brother.

It was agreed, that if the court should be of opinion that the plaintiff was entitled to recover, the verdict was were *aliens;* and that the act of the legislature of 1804, giving the whole of his real estate to L. one of his four heirs, in exclusion of the rest, being contrary to the treaty, was inoperative; but, that the heirs not having entered their dissent to the award of the commissioners, within the two years limited by the act, were for ever barred and concluded by that award, except L. who was a *feme covert,* and within the saving of the act, there being no saving on account of absence from the state.

N. a native of Ireland emigrated to the United States in 1778, or 1779. In 1784 he purchased a lot of land in this state, and in 1798, died without issue, leaving a brother and three sisters living in Ireland. In 1804, an act of the legislature was passed, vesting the real estate of which N. died seised, in one of his sisters who had married an alien, in like manner as if she had been a citizen, at the death of N.

In an action of ejectment brought by F. who claimed a moiety of the lot pursuant to an award of the Onondaga commissioners in his favour, it was held, that N. having emigrated to this country after the declaration of independence, was to be considered as an alien, and that the land held by him, was, by the 9th article of the treaty of 1794, between *Great Britain* and the *United States,* vested in him and his heirs, notwithstanding they

ALBANY,
February, 1809.

Jackson
v.
Wright.

*2 Vin. 260. 278.
1 Comy. Dig. 96.

† Rev. Laws, v.
2. p. 266.

‡ Laws of N. Y.
v. 3. p. 355. 504.

§ 6 Comyns, 63.
Prerog. D. 70.
4 Co. 58.

to stand; otherwise, it was to be set aside, and a nonsuit entered.

*Cady* for the plaintiff. Though *Lydia Henry* was mar-ried, yet her husband being an alien, she must, as respects this case, be regarded as a *feme sole*.* The husband gain-ed no interest in right of his wife. Any saving, therefore, in the act relative to the titles in *Onondaga County*,† of the rights of married women, does not apply. By that act, the award of the *commissioners*, was made final and conclusive, if notice of a dissent was not given in two years, after pro-nouncing the award; and as no such dissent was enter-ed, the same must be regarded as conclusive, in *April* 1804, to which time the act was extended.‡ The *com-missioners* having been appointed by the people, to decide upon all titles relative to lands in the *county* of *Onondaga*, were authorised to determine on the rights of the people, as well as private persons; and having decided on the title, the people are concluded by their award.

*Henry*, contra. The patentee transferred his right to *Nelson* in 1794, and *Nelson* died in 1798, before the award, so that he could not be affected by the award, nor any of his representatives, who are within the saving clause of the act. The plaintiff in ejectment, must always recover on the strength of his own title; and if the defendant can show a subsisting title out of the lessor, it is enough to de-feat his recovery. Now *Nelson* died without issue, and all his next collateral kindred are *aliens*, so that the property *escheated* to the people of this state, for want of persons capable in law to inherit. If so, then the title is in the people, and the plaintiff cannot recover. No *office* was ne-cessary in this case, for wherever a right becomes vested in the sovereign, by operation of law, as by descent, re-mainder or reverter, or by *escheat*, no officer is necessary.§

The power delegated to the *commissioners*, to decide on the titles to lands in the *county* of *Onondaga*, gave them no authority to decide on the rights of the people. The

act was intended, merely to settle the disputes between private persons. By the 10th *section* of the act, the duty of the *commissioners* in regard to the rights of the people, is precisely marked out. They are required in all cases where it shall appear to them, that the people, or some other persons, other than any of the claimants, are entitled to the lands, to cause an entry to that purpose to be made in their books, and report the cases to the legislature.

Again, the statute of limitations in *England*, is held, not to extend to the *crown*, unless the king is expressly mentioned. Our statute is a copy from the *English* statute. By parity of reasoning, the limitation in the act relative to the lands in *Onondaga county*, cannot be extended to the people unless by express words. If on the death of *Nelson*, the right of property vested in the people by *escheat*, that right has never been divested. Should it be said, that *escheat* is one of the feudal qualities of land, and that the feudal tenures being abolished in this state, the doctrine does not apply here; it may be answered, that though the notion of *escheat* has a feudal origin in *England*, yet it is founded on a principle of universal law, that whatever does not belong to any individual, becomes the property of the sovereign; for it is the policy of the law to give a determinate owner to every thing.*

* 2 *Domat.* 356. B. 1. tit. 6. s. 3.

Though an office should be thought necessary, and no *office* was found; yet the people having an inchoate right to the land, a person entering would be an intruder, and a writ of intrusion, in behalf of the people, might issue. The title of the people, may be made perfect by an inquisition, and the defendant has a right to protect himself under the title of the people. In 1804, the award of the *commissioners* could not be conclusive against the people.

By the act of the 3d *April*, 1804, *Lydia Henry* merely acquired the character of a citizen. A capacity to take real estate could injure no one; and being then married, she took the estate, by descent, as a *feme covert*. A *feme covert* cannot alienate her rights by a matter *in pais*. She cannot act without her husband. If a *feme sole*, being a

citizen of this state, marries an *alien*, still the husband must join with her in any conveyance of her property. The court ought to be liberal in the construction of the act, so as to extend the *proviso*, since it is in furtherance of justice.

*Cady*, in reply. Admitting that the right was in the people by *escheat*, still the people are estopped by the award of the *commissioners*. The commissioners being appointed by the people, are judges of their own choice, and are authorised to decide on their rights.

The disability of a *feme covert* does not arise from the marriage simply, but from the rights acquired by the husband by the marriage. Now an *alien* has no rights in regard to lands, nor can he acquire any by marriage ; as it respects the estate of the wife, he is nobody.

Again, the defendant not pretending any right, ought to be presumed as a party to the award of the *commissioners*. Being a wrong doer, he ought not to be allowed to set up the right of another, to protect himself.

VAN NESS, J. delivered the opinion of the court. The lessors of the plaintiff having, in the first instance, made out a sufficient title to a moiety of the premises in question, by the award of the *Onondaga* commissioners, we are to inquire, how far the defence relied upon has been supported. This defence is, that a subsisting title has been shown in *Lydia Henry*, which it is supposed she acquired by virtue of the act of the 3d *April*, 1804.

The legislature, probably, passed that act upon a suggestion, that the lot in question had escheated to the state, on the ground that *Thomas Nelson*, who had purchased it from *Folliard*, left none but alien heirs ; and certainly, without being aware, that this was a case coming within the provision of the treaty of amity and commerce between the *United States* and *Great Britain*, concluded in 1794. By the 9th article of that treaty, " it is agreed, that *British*

subjects, who now hold lands in the territories of the *United States*, and *American* citizens, who now hold lands in the dominions of his majesty, *shall continue to hold them according to the nature and tenure of their respective estates, and titles therein;* and may grant, sell, or demise the same to whom they please, in like manner as if they were natives; and that neither *they nor their heirs* or assigns, so far as may respect the said lands, and the legal remedies incident thereto, shall be regarded as aliens."

*Thomas Nelson,* it appears, emigrated from *Ireland,* where it is to be presumed he was born, to the *United States,* in 1779; and resided here until his death, in 1798. Having emigrated after the declaration of our independence, he must be regarded as an alien, unless it is shown, by competent proof, that he became a citizen, after that era, by naturalization. But that fact has not been shown. Naturalization is matter of record, and, perhaps, ought never to be presumed; but even if that were allowable, there is nothing in the present case to authorise such a presumption. If it were necessary to give an opinion as to the legal effect of the act of 1804, we might, for the purpose of upholding the title thereby granted to *Lydia Henry,* infer, from the language adopted therein, that *Nelson* had been permitted to purchase and hold lands in this state, by some of the many acts of our legislature, by which such permission has been given to aliens. It would, however, be going too far, to infer from this, that he had also been admitted to all the municipal rights enjoyed by citizens only.

*Nelson,* therefore, must be deemed to have been a *British* subject in 1794; and it appearing that he had purchased the lands in question previously to that period, the treaty settled his right thereto, and, upon his death, it descended to his heirs, notwithstanding they were aliens. The intention of the contracting parties to that treaty was, that the citizens and subjects of each should be quieted in the enjoyment of their estates, in the same manner as if they and their heirs had been native citizens.

ALBANY,
February, 1809.

Jackson
v.
Wright.

The case states, that *Nelson*, when he died, left three sisters and a brother living in *Ireland*, and that *Lydia Henry*, one of the sisters, then was, and still is, a *feme covert*. These four heirs, therefore, all inherited this property, and had a complete vested title thereto, on the death of *Nelson*, in 1798. The treaty is the paramount law; and the act of 1804 being contrary to it, inasmuch as it gives the estate to one of the four heirs in exclusion of the rest, is inoperative.

The only remaining point to be examined, is, whether any of these heirs are barred of their right to recover, by the limitation in the act for the appointment of the *Onondaga* commissioners. No dissent from the award has been entered, and more than two years had elapsed from the making the award to the commencement of this suit; so that all the heirs would be barred, were it not that the act saves the rights of married women. This saving extends to the right of *Lydia Henry* only, who was a *feme covert*, but the right of the others is gone, as absence from the state is not a saving in the act.

It results, therefore, that the defendant has shown a subsisting title in *Lydia Henry*, to an undivided fourth part, and the lessors of the plaintiff are entitled to recover their undivided eighth parts of the lot in question.

*Judgment accordingly.*