John Doe, on the demise of William A. Dockstader, *vs.* Richard Roe, Casual Ejector, and Robert R. Kershaw, Tenant in Possession.

*Treaty between United States and Great Britain, Paramount to Statute of State—Non-resident Aliens—Next of Kin ; Rights of.*

1.   Section 1 of the treaty existing between the United States and the Kingdom of Great Britain and Ireland, which was ratified July 28, 1900, contemplates the elimination of the disqualification of alienage, under the statute of this State, in the next of kin, so far as it relates to the subject matter of the present case, and puts non-resident alien next of kin on the same footing as if they were residents of this State at the time of the death of the intestate.

2.   The said treaty is paramount to the statute of this State (*Sec. 1, Chap. 81, Rev. Code*), which provides that " any such kindred, being aliens and not residing within the limits of the United States at the time of the intestate's death, shall be passed by, and the effect shall be the same as if they were dead." The said statute cannot be justly construed as an enabling statute, but is manifestly a disqualifying statute on the express ground of alienage.

(*July 1, 1903.*)

Lore, C. J., and Grubb and Pennewill, J. J., sitting.

*Horace G. Knowles* and *William S. Hilles* for plaintiff.

*Herbert H. Ward* and *Walter H. Hayes* for defendant.

Superior Court, New Castle County, May Term, 1903.

Ejectment (No. 182, May Term, 1903). Case stated.

Lore, C. J.:—From the case stated it appears that Robert Roberts, a resident and citizen of the State of Delaware, died in December, 1901, intestate, seized in fee of certain real estate situated in the City of Wilmington in the State of Delaware.

That he left no wife or children; that his next of kin were the four children of a then deceased sister, Maria Kershaw, viz.,

Tom Kershaw, Joseph Kershaw and Nanny Kershaw, all at the time of the death of the intestate being residents of England and subjects of Great Britain and Ireland, and Robert R. Kershaw, the defendant, at that time an alien Englishman, but resident of the State of Pennsylvania in the United States.

That by deed dated October 14, 1902, the said Tom Kershaw and wife, and said Joseph Kershaw and wife, conveyed all their one-half interest in said real estate to William L. Dockstader, the defendant.

The plaintiff claims title to the one half of said real estate, under the terms of a treaty between the United States and the Kingdom of Great Britain and Ireland, which was ratified July 28, 1900, to go into effect ten days thereafter and remain in force ten years. So much of said treaty as relates to this case is as follows :

"*Article 1.* Where, on the death of any person holding real property (or property not personal) within the territories of one of the contracting parties, such real property would, by the laws of the land, pass to a citizen or subject of the other, were he not disqualified by the laws of the country where such real property is situated, such citizen or subject shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary, and to withdraw the proceeds thereof, without restraint or interference, and exempt from any succession, probate or administrative duties or charges other than those which may be imposed in like cases upon the citizens or subjects of the country from which such proceeds may be drawn."

"*Article 5.* In all that concerns the right of disposing of every kind of property, real or personal, citizens or subjects of each of the high contracting parties shall in the dominions of the other enjoy the rights which are or may be accorded to the citizens or subjects of the most favored nation."

The defendant, on the other hand, claims the whole of the

said land under the provisions of *Section 1, Chapter 81* of the *Revised Code* of this State, which, so far as it relates to this case, is as follows :

"And it shall be no objection to the kindred, husband, or widow of any such alien or of any citizen deceased, taking lands, tenements or hereditaments by virtue of the intestate law of this State, that they are aliens, if they, at the time of the death of the intestate, reside within the limits of the United States ; and any such kindred, being aliens and not residing within the limits of the United States at the time of the intestate's death, shall be passed by, and the effect shall be the same as if they were dead."

It is conceded by the defendant's counsel that the devolution of title to real estate in Delaware, to the extent of the plaintiff's claim in the real estate in this case, is within the scope of Article 6 of the Constitution of the United States, which provides as follows :

" This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made or which shall be made under the authority of the United States, shall be the supreme law of the land ; and the Judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

This admission eliminates one of the questions that met us at the threshold of the discussion.   It seems, however, to be clearly supported by the cases cited by the plaintiff, viz. : *Hauenstein vs. Lyham, 100 U. S., 483 ; Chirac vs. Chirac, 2 Wheat., 260 ; Jackson vs. Wright, 4 Johns., 75 ; Yaker vs. Yaker, 4 Met. (Ky.), 33 ; Opel vs. Shoup, 100 Iowa, 407.*   In the latter case the whole subject is very fully discussed.   See also many other cases in *American and English Ency. of Law, Vol. 2, p. 97,* etc.

The defendant further contends, however, that the language of said Section 1 of the treaty is so obscure, ambiguous and con-

tradictory as to be incapable of any sensible interpretation, and especially of that claimed by the plaintiff.

It is almost inconceivable that the language of a paper of such grave importance as this treaty between two great nations should be clothed in language at once so loose and careless. It reflects but little credit upon the persons charged with the duty of framing this treaty, and suggests that some degree of competency should hereafter be required in such cases. Still, however, in applying the ordinary rules of interpretation to the plain purposes and scope of the treaty, it seems to us that Section 1 of the treaty contemplates the elimination of the disqualification of alienage in the next of kin, so far as it relates to the subject matter of this suit, and puts the next of kin on the same footing as if they were all residents of this State at the time of the death of the intestate.

Again, we cannot agree with the contention of defendant's counsel, that our statute which passes by any non-resident alien next of kin as if they were dead, even when taken most broadly in connection with the rest of the statute and context, can justly be construed as an *enabling* statute. Manifestly it is a disqualifying statute on the express ground of alienage.

In our judgment the treaty controls this case, and is paramount to our statute. We therefore hold that William L. Dockstader, the plaintiff, was and is entitled to one-half interest in the lands and premises in the declaration in this case mentioned.