Original
No. 2003-798

### PETITION OF THE JUDICIAL CONDUCT COMMITTEE

Argued: May 12, 2004
Opinion Issued: June 14, 2004

*Nelson, Kinder, Mosseau & Saturley, P.C.,* of Manchester (*William C. Saturley* and *Kristin M. Yasenka* on the brief, and *Mr. Saturley* orally), for the Judicial Conduct Committee.

*Peter W. Heed,* attorney general (*Ann F. Larney,* associate attorney general, on the brief and orally), for the State.

*Betsy B. Miller,* house legal counsel and *Richard J. Lehmann,* senate legal counsel, by brief, for the Speaker of the New Hampshire House of Representatives and the President of the New Hampshire Senate, as *amici curiae.*

NADEAU, J. The Judicial Conduct Committee (Committee) brings this petition for original jurisdiction seeking guidance as to the constitutionality of RSA chapter 494-A (Supp. 2003). The Committee contends that RSA chapter 494-A is unconstitutional. To the extent set forth in this opinion, we agree.

The Committee was created by Supreme Court Rule "to provide for the orderly and efficient administration of the Code of Judicial Conduct, Rule 38 of the Rules of the Supreme Court." SUP. CT. R. 39(1). It is empowered, among other things, "to consider and investigate the conduct of any judge, as that term is defined in Rule 40(2), within the jurisdiction of this court," and may, where appropriate, dismiss a complaint or grievance, dispose of a complaint or grievance "by informal resolution or adjustment," or commence disciplinary proceedings in the supreme court. SUP. CT. R. 39(9).

In RSA chapter 494-A, the legislature created the Judicial Conduct Commission (Commission) and declared it to "be responsible for addressing complaints concerning the conduct of judges and clerks in the courts of this state." RSA 494-A:10, I. It is also empowered to "impose

disciplinary actions with regard to a complaint by reprimand or censure," and is directed to report evidence of criminal conduct to the attorney general and to refer to the legislature any matter in which it finds that the judge's or clerk's conduct warrants his or her removal. *Id.* As amended in 2003, RSA 494-A:1 provides that "[a]ll complaints made against judges . . . and clerks . . . shall be directed to the commission."

The Committee argues that RSA chapter 494-A violates the separation of powers doctrine embodied in Part I, Article 37 of the State Constitution by "encroaching on the power of the New Hampshire Supreme Court to regulate the conduct of the judiciary." Specifically, the Committee asserts that RSA chapter 494-A, as amended, "purport[s] to declare the [Commission] the sole authority to regulate the conduct of judges," and thereby "commandeer[s]" that authority away from the judicial branch.

In reviewing a legislative act, we presume it to be constitutional and will not declare it invalid "except upon inescapable grounds." *Petition of Governor and Executive Council,* 151 N.H. 1, 4 (2004) (quotations and brackets omitted). In other words, we will not hold a statute to be "unconstitutional unless a clear and substantial conflict exists between it and the constitution." *Id.* (quotation and brackets omitted).

■ ■ One branch of government, however, is not constitutionally permitted to usurp the essential power of another. *Id.* at 9; *see also State v. Lindsey,* 632 N.W.2d 652, 659 (Minn. 2001). To do so would violate the separation of powers doctrine. *Petition of Governor,* 151 N.H. at 9; *see also* N.H. CONST. pt. I, art. 37. The separation of powers directive "is violated by an improper imposition upon one branch of constitutional duties belonging to another, or, an encroachment by one branch upon a constitutional function of another branch of government." *Opinion of the Justices,* 110 N.H. 359, 363 (1970) (citations omitted). When the actions of one branch of government defeat or materially impair the inherent functions of another branch, such actions are not constitutionally acceptable. *In re Rosenkrantz,* 59 P.3d 174, 208 (Cal. 2002), *cert. denied,* 538 U.S. 980 (2003).

■ For example, when the Governor and Council adopted a resolution seeking to prevent conflicts of interest on the part of elected State officials, in the exercise of our responsibility to protect the essential functions of all three co-equal branches of government from improper encroachment, we observed that "[h]owever desirable comprehensive legislation in the area of conflict of interest may be, the enactment of such legislation is the prerogative and responsibility of the legislature and not of the executive." *Opinion of the Justices,* 116 N.H. 406, 413 (1976). We also noted that most elected State officials were members of the legislature and that "[c]learly

it is not within the prerogative of the Governor and Council to regulate the conduct of such officials." *Id.* at 411. Similarly, the regulation of the conduct of judges is the prerogative and responsibility of the judiciary and not of the legislature.

This court has stated that "[t]he power of the judiciary to control its own proceedings, the conduct of participants, the actions of officers of the court and the environment of the court is a power absolutely necessary for a court to function effectively and do its job of administering justice." *State v. LaFrance*, 124 N.H. 171, 179-80 (1983). Thus, the judicial branch has the inherent power to regulate officers of the court. *See Smith v. State*, 118 N.H. 764, 770 (1978). Such inherent power of the judicial branch is "supported by consistent custom," the common law and judicial precedent. *See In re Mussman*, 112 N.H. 99, 101 (1972). It has also been confirmed by statute, *see* RSA 490:4 (1997), and constitutional amendment, *see* N.H. CONST. pt. II, art. 73-a; *see also Opinion of the Justices (Judicial Salary Suspension)*, 140 N.H. 297, 299-300 (1995).

This inherent authority, and "our superintending control over the courts, includes the authority to discipline members of the judiciary." *Snow's Case*, 140 N.H. 618, 621 (1996) (citations omitted). Moreover, maintaining public confidence in the administration of justice is the responsibility of this court, *see Opinion of the Justices (Judicial Salary Suspension)*, 140 N.H. at 299, and our system of judicial discipline is therefore designed to "foster[] public confidence in the judiciary, as well as maintain[] its integrity," *Petition of Thayer*, 145 N.H. 177, 180 (2000). Accordingly, in *Mussman*, 112 N.H. at 103, we recognized this court's authority, as an exercise of "judicial power," to inquire into the conduct of judges and to impose disciplinary measures short of removal from the bench. Common law precedent makes clear that the authority to discipline judges is an essential, and indeed, "exclusive[,] judicial function," *Opinion of the Justices (Judicial Salary Suspension)*, 140 N.H. at 301.

The State argues that because RSA chapter 494-A does not "prohibit[] the Court from reprimanding, censuring or suspending a judge for misconduct," it does not violate the separation of powers doctrine. The court's superintending function, however, entails more than just the power to impose discipline on judges. It includes the authority to determine how best to regulate their conduct, and therefore encompasses the discretion to determine when, whether and to what extent discipline should be imposed. *Cf. Opinion of the Justices (Judicial Salary Suspension)*, 140 N.H. at 300-01. Because RSA 494-A:1, as amended in 2003, specifically interferes with

that discretion, it usurps an essential power of the judiciary, and is, therefore, unconstitutional.

The State next contends that RSA chapter 494-A was validly enacted pursuant to the legislature's legislative power. Specifically, it points to the powers of impeachment and address, *see* N.H. CONST. pt. II, arts. 17, 73, and argues that "[t]he discipline of judges is a shared responsibility among the three branches [of government] and has never been exclusive to any branch."

The separation of powers provision of our State Constitution "recognizes that separation of powers in a workable government cannot be absolute," *Opinion of the Justices*, 110 N.H. at 362, and therefore directs that the essential governmental powers should be as separate and independent "as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity." N.H. CONST. pt. I, art. 37. Thus, we have stated that Part I, Article 37 "contemplate[s] some overlapping and duality as a matter of practical and essential expediency." *Opinion of the Justices*, 113 N.H. 287, 290 (1973). We described this overlapping of powers in *Merrill v. Sherburne*, 1 N.H. 199, 207 (1818):

> It has been contended, and we with readiness admit, that from the close of [Part I, Article 37 of the State Constitution], the inference is clear, that our constitution did not intend to make a total separation of the three powers of the government. The executive was to be united with the legislature in the passage of laws; and the former was to depend upon the latter for his salary. A part of the judiciary, too, was united with a part of the legislature in the trial of some impeachments; and all of the judiciary were made dependent on the executive for appointments and on the legislature and executive for the erection of courts, the apportionment of jurisdiction, for compensation and for removal by address.

As the *Merrill* court further explained, however, "these connexions and dependencies are not left to implication; they are all created by subsequent express provisions." *Id.* In addition, this court has noted that where one governmental branch exercises the powers of another branch, "such powers may be only attributes of an ancillary character to give efficiency to the activities of the department to which they are attached." *Opinion of the Justices*, 85 N.H. 562, 567 (1931).

Accordingly, the legislature has the power, expressly granted by the constitution, to remove a judge from office by impeachment or, together with the executive, by address. N.H. CONST. pt. II, arts. 17, 73. The

legislature may also undertake those ancillary activities, such as investigation, that "give efficiency to" impeachment or address proceedings. *Opinion of the Justices*, 85 N.H. at 567; *cf. Petition of Judicial Conduct Comm.*, 145 N.H. 108, 112 (2000) (*Petition of JCC*). The legislature may, correspondingly, choose a commission or other vehicle to effectuate those purposes.

■ As discussed above, however, the power to regulate the conduct of judges, including the authority to take disciplinary action short of removal, is a judicial power. *See Mussman*, 112 N.H. at 103. That power is neither expressly granted to the legislature by the State Constitution, nor necessary for it to conduct efficient impeachment or address proceedings. Thus, it is not an "overlapping" power that is shared by the legislature, but rather, is exclusive to the judiciary. *See Opinion of the Justices (Judicial Salary Suspension)*, 140 N.H. at 301.

To the extent, therefore, that RSA chapter 494-A purports to authorize the Commission to impose disciplinary action on judges, we find, on inescapable grounds, that it is unconstitutional.

The *amici curiae* argue that the issue raised by the Committee's petition is a nonjusticiable political question. The nonjusticiability of a political question derives from the principle of separation of powers. *See Horton v. McLaughlin*, 149 N.H. 141, 143 (2003). The justiciability doctrine "prevents judicial violation of the separation of powers by limiting judicial review of certain matters that lie within the province of the other two branches of government." *Horton*, 149 N.H. at 143. A case presents a nonjusticiable political question "where there is a textually demonstrable constitutional commitment of the issue to a coordinate political department." *Id.* (quotation omitted). Where there is such commitment, a court should decline to adjudicate the matter to avoid encroaching upon the powers and functions of that coordinate political branch. *See id.*

The *amici curiae* point out that Part II, Article 17 of the State Constitution vests the power of impeachment in the house of representatives, with trial before the senate. Part II, Article 38 further provides that "[t]he senate shall be a court, with full power and authority to hear, try, and determine, all impeachments made by the house of representatives against any officer or officers of the state, for bribery, corruption, malpractice or maladministration, in office." In addition, under Part II, Article 73, "[t]he governor with consent of the council may remove any commissioned officer for reasonable cause upon the address of both houses of the legislature, provided nevertheless that the cause for removal shall be stated fully and substantially in the address and shall not be a cause which is a sufficient ground for impeachment." The *amici curiae*

argue that "[t]he textual commitment of matters related to the removal of judges by impeachment or address limits judicial authority to intervene in such matter[s]."

This court has recognized that "[t]he impeachment of judges is demonstrably committed to the legislative branch by Part II, Article 17 of the New Hampshire Constitution." *Petition of JCC*, 145 N.H. at 111-12. "Indeed, impeachment is exclusively a legislative prerogative." *Horton*, 149 N.H. at 143 (quotation omitted). Similarly, removal by address is demonstrably committed to the legislative and executive branches by Part II, Article 73 of the State Constitution. As we noted in *Mussman*, "[t]he power of the Governor and Council to remove a state officer for reasonable cause upon the address of both houses of the legislature is an executive and legislative proceeding." *Mussman*, 112 N.H. at 100 (quotation omitted).

We have also recognized that "[t]he legislature has full authority to establish all rules, regulations and laws necessary and proper to carry out its constitutional mandate. Thus, the legislature's exclusive power to conduct impeachment proceedings necessarily carries with it the full authority to make, implement and interpret rules pertaining to impeachment." *Horton*, 149 N.H. at 144 (citations omitted). Accordingly, where the legislature delegated to the House Judiciary Committee "the authority to conduct an impeachment investigation and to draft the rules under which its investigation would be conducted," we declined, on justiciability grounds, to interfere with such rules. *Petition of JCC*, 145 N.H. at 112.

█ RSA chapter 494-A touches upon the powers of impeachment and removal by address in directing the Commission to refer to the legislature any matter warranting removal of the judge or clerk. *See* RSA 494-A:10, I. It also empowers the Commission to "conduct such further investigation as it may deem necessary before ruling on the complaint." RSA 494-A:11, I. To the extent that the Commission is authorized to investigate and report to the legislature on conduct by a judge that may warrant impeachment or removal by address, we decline, on justiciability grounds, to interfere with those functions of the Commission.

Most of the Commission's functions, however, deal with prescribing a code of judicial conduct, determining whether it has been violated, and "impos[ing] disciplinary actions ... by reprimand or censure." RSA 494-A:10, I. Nowhere does the text of our State Constitution demonstrably commit these functions to the legislature. Accordingly, the controversy over the Commission's remaining duties is justiciable and, for the reasons

and to the extent set forth in this opinion, we find RSA chapter 494-A unconstitutional.

*So ordered.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred; DUGGAN, J., concurred specially.

DUGGAN, J., concurring specially. RSA 494-A:1, as amended in 2003, provides that: "All complaints made against judges . . . and clerks . . . shall be directed to the [Judicial Conduct C]ommission." In my view, the only issue that we need to decide is whether this provision violates Part I, Article 37 of the New Hampshire Constitution. I agree with the majority that because RSA 494-A:1 vests exclusive authority in the commission to hear complaints against judges and clerks, it is unconstitutional.