J-S56025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| R.I. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| N.A | : | |
| | : | |
| Appellant | : | No. 750 MDA 2018 |

Appeal from the Order Entered, April 5, 2018,
in the Court of Common Pleas of York County,
Civil Division at No(s):  2018-FC-50-12.

BEFORE:  GANTMAN, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED DECEMBER 07, 2018**

N.A. (Husband) appeals from the order granting R.I. (Wife) her petition for protection under the Protection From Abuse (PFA) Act. 23 Pa.C.S.A. §§ 6101 – 6122.  We affirm.

Although the parties' date of marriage is unclear, they were living together for approximately four tumultuous months when, on December 31, 2017, an argument became violent, and Husband repeatedly struck Wife.  Wife called the police, who helped her leave the marital home.  Wife obtained a temporary PFA order in January 2018.  On April 5, 2018, after a series of continuances, the trial court held a hearing during which the parties, their roommate, and the responding police officer all testified.  The trial court

granted Wife's petition and entered a three-year PFA order.  Husband presents this appeal.[1]

Husband raises the following issues:

1. Whether [Wife] presented evidence at trial sufficient to sustain the trial court's decision granting her request for a final protection order.

_____

[1] Husband initially failed to comply with Pa.R.A.P. 1925 when he did not abide by the deadline set forth in the trial court's Rule 1925(b) order directing him to provide his statement of errors.  For that reason, we are hesitant to even review the merits of Husband's case.  As both the Supreme Court and an *en banc* panel of this Court explained, Pa.R.A.P. 1925(b) is a bright-line rule, such that failure to comply with the minimal requirements will result in **automatic waiver** of the issues. ***See Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.***, 888 A.3d 222, 223 (Pa. Super. 2014) (emphasis original) (citing ***Commonwealth v. Schofield***, 888 A.2d 771, 774 (Pa. 2005); ***see also Commonwealth v. Castillo***, 888 A.2d 775, 780 (Pa. 2005).  Our Supreme Court emphatically disapproves of any leniency on this rule. ***Id.*** (citing ***Castillo,*** 888 A.2 at 779).  The reason for the Courts' strictness is the potential for inconsistent results; discretion to pick and choose when to find waiver produces unsupportable distinctions between similarly situated litigants. ***Id.***

However, Rule 1925 is not without exceptions when there is good cause shown.  In extraordinary circumstances, the trial judge may allow for the filing of a Statement *nunc pro tunc*. ***See*** Pa.R.A.P 1925(b)(2).  Instantly, we glean from the record that Husband substituted counsel after the trial court's decision; it was Husband's new counsel who filed the notice of appeal.  However, the substitution was not formalized for weeks thereafter and even then, not docketed until after Memorial Day Weekend.  Perhaps as a consequence, the trial court likely sent its Rule 1925(b) order to Husband's former counsel, or, at least, Husband's new counsel averred he never received it despite searching high and low.  Thus, Husband's new counsel was unaware of the deadline to submit his statement of errors.  The trial court deemed this turn of events to be the type of circumstances anticipated by 1925(b) and accepted Husband's concise statement *nunc pro tunc*.  While we observe that courts have extremely little discretion in this area, we accept the trial court's decision to allow the *nunc pro tunc* statement and proceed to the merits.

2. Whether the evidence presented by [Wife] at trial carried the weight required to sustain the trial court's decision granting [Wife's] request for a final protection order.

Husband's Brief, at 3-4.

Our standard of review is well-established. In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. ***T.K. v. A.Z.***, 157 A.3d 974 (Pa. Super. 2017) (citation omitted). Our Supreme Court defines "abuse of discretion" in the following way:

The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, with the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Mescanti v. Mescanti***, 956 A.2d 1017, 1019 (Pa. Super. 2008) (quoting ***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000) (citation omitted). Moreover, "[c]redibility of the witnesses and the weight accorded their testimony is within the exclusive province of the judge as fact finder." ***Mescanti***, 955 A.2d at 1019-1020 (citing ***Karach v. Karach***, 855 A.2d 535, 537 (Pa. Super. 2005).

Husband challenges both the sufficiency and the weight of evidence, arguing that neither supports the trial court's final protection order. We address those claims together.

When a claim is presented on appeal that the evidence is not sufficient to support a PFA order, we review the evidence in the light most favorable to the verdict winner and grant her the benefit of all reasonable inference. *Id.* (citing *Fonner v. Fonner*, 731 A.2d 160, 161-163 (Pa. Super. 1999)). We then determine whether the evidence was sufficient to sustain the trial court's conclusions by a preponderance of the evidence. The preponderance of the evidence standard is "defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004).

We have emphasized that "the purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse. *T.K.,* 157 A.3d at 976 (citing *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1262 (Pa. Super. 2008). The PFA Act, 23 Pa.C.S.A. §§ 6101 – 6122, defines "abuse," in relevant part, as

> **"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.

- 4 -

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

* * *

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102(a)(1)-(3), (5).

In the instant matter, the trial court could have chosen from any one of these grounds.

The New Year's Eve incident was the impetus for Wife's filing for protection, but testimony revealed that the abuse started soon after Wife started living with Husband.[2]  Wife testified that in October 2017, Husband punched her several times above the knee causing a visible bruise that lasted for more than a week.  According to Wife, Husband became abusive toward her after she indicated that she would testify against him on a theft charge if she had to.[3]  ***See*** N.T., 4/5/18, at 4.

_____

[2] Apparently, Wife immigrated to the United States from Egypt in September 2017 to marry Husband, who is 34 years her senior.  The record is unclear when the parties married.

[3] Apparently, Husband was caught shoplifting at Walmart, and Wife had been a witness. N.T., at 4, 46.

In a separate instance the following month, Wife testified that Husband handcuffed her for approximately one half hour, during which he taunted her as he held a gun to her chest. She testified that Husband told her he could kill her right now. *Id.*, at 9. Wife testified that, when she began to cry, Husband asked why since "we are all going to die." *Id.* She also testified that after her took off the handcuffs, he raped her. *Id.*

And then on New Years' Eve, as the parties' were getting ready for a gathering at the home of Husband's friend, another argument began. Husband wanted to stay over at the friend's house after the party, and Wife evidently did not. *Id.*, at 4. Wife testified that Husband struck her arm repeatedly, and Wife called the police to help her get out of the house. Wife called from a cellphone given to her by a social worker. The social worker was employed at the center where Wife took English lessons. When Wife confided in the social worker about her abusive Husband, the social worker gave Wife the phone, taught her how to dial 911, and made her memorize in English how to ask the 911 dispatcher for an interpreter.[4] *Id.*, at 4-5.

In addition to the above testimony, Wife submitted pictures of her bruises, which were admitted without objection. The trial court explicitly noted that it found Wife's testimony to be credible and Husband's testimony not to be.

---

[4] Wife only speaks Arabic. She testified through an interpreter at the PFA hearing. Husband speaks both Arabic and English, but preferred to testify in English, so his interpreter was excused.

In his brief, Husband cites the appropriate evidentiary standard, but then argues the trial court's decision was an abuse of discretion because Wife's evidence was not "overwhelming." Husband's Brief, at 5. Although he did not object to the admission of photographs into evidence, he now takes issue with the fact that they are not timestamped. He also challenges Wife's account by citing the testimony of the parties' roommate, who stated he never saw or heard the abuse, as well as the responding officer, who also stated he did not see any bruises. Husband cites the portion of testimony where the responding officer specifically asked Wife, through an interpreter, whether Husband struck Wife. Wife said no. N.T., at 23-25.

Contrary to Husband's position, the evidence need not be "overwhelming." The sum of the evidence needs only to "tip the scale" in Wife's favor. *See Raker*, 847 A.2d at 724.

Regarding the photos, it seems that Husband now wants to make an authenticity objection, but understands he cannot raise the issue for the first time on appeal. Instead he argues that a photo without a timestamp is against the weight of the evidence. The rules of evidence do not require a timestamp, however, and the court found Wife's testimony regarding the photographs to be credible.

Moreover, the "conflicting" testimony that Husband cites is not as "weak" as he would have us believe. The roommate testified that he never saw or heard abuse. N.T., at 29-30. But he also testified that he is a full-time student at Penn State, York Campus. *Id.*, at 29. Wife testified that the rape

and incident with the gun occurred in November, during a school break when the roommate was traveling. The roommate testified he was also out of town when the New Year's Eve incident occurred. *Id.*, at 30. Furthermore, the roommate testified that his bedroom was two rooms away from the parties', and he acknowledged that he does not speak Arabic. *Id.*, at 31. As to Wife's bruises, the roommate could not have seen them anyway, because Wife always wore a traditional headscarf and long sleeves in his presence. *Id.,* at 31-32. It was perfectly reasonable for the trial court to conclude that the abuse occurred and that the roommate was entirely ignorant of it.

Likewise, the police officer's testimony can be reconciled with Wife's testimony. The officer also testified that he did not observe any bruises. Again, Wife was traditionally covered. *Id.*, at 15-16. The police officer testified that he asked Wife, via telephonic interpreter, whether she suffered abuse. The officer said her answer was no. Wife's testimony was that she did not tell the officer about any abuse because she did not think it was relevant. She said her only concern – and the reason she called the police – was so that they could help her safely leave the house. *Id.*, at 15. Wife tried leaving the marriage before, but Husband interfered. In that instance, when she implored the wife of one of Husband's friends for help, Husband told the couple to stay out of their business. *Id.*, at 11.

The trial court concluded that the culture and language barriers were a reasonable explanation for Wife's omission. We agree. Here, the police responded to a domestic violence emergency where they had to rely on an

interpretation service on a three-way telephone call. Under these circumstances, something could easily be lost in translation.

Meanwhile, Husband offered only a blanket denial of any and all wrongdoing. He offered no counter-explanation for the bruises. He denied that there was even an argument on New Year's Eve, stating that it was "peaceful" and "nothing happened." *Id.*, at 31-32, 35. Husband alleges that Wife married him for a Green Card, had an affair with his friend, and then conspired with her lover to steal from Husband. *Id.*, at 37. He argues that Wife's motivation for the petition is that she wanted a divorce, but did not want to risk her Green Card status. *Id.*, at 20. Apart from Husband's testimony, there is no additional evidence to support his claims. The trial court did not find Husband to be credible. Instead, the trial court believed Wife, who testified that, before she concerned herself about any immigration case, she feared first and foremost for her life. *Id.*, at 20.

Testimony and photographs are sufficient evidence to support a PFA order. *See, e.g., Miller on Behalf of Walker v. Walker,* 665 A.2d 1252 (Pa. Super. 1995). The trial court has exclusive province to make credibility determinations. *Mescanti*, 955 A.2d at 1019-1020. When we review the evidence of this case, in light of the trial court's credibility determinations, and in a light most favorable to the successful petitioner, we conclude that the trial court's decision is sufficiently support by the evidence and not against the evidentiary weight.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/07/2018