646 A.2d 694

Honorable Rolf LARSEN, Justice, Supreme
Court of Pennsylvania, Petitioner,

v.

SENATE OF PENNSYLVANIA, Senate Impeachment Trial Com-
mittee Senator Stewart J. Greenleaf, Chairman, and Members
of the Committee: Senators Robert C. Jubelirer, Charles D.
Lemmond, Jr., H. Craig Lewis, Jeanette F. Reibman, Tim
Shaffer, and Hardy Williams, Respondents.

Commonwealth Court of Pennsylvania.

Argued Aug. 2, 1994.

Decided Aug. 5, 1994.

William C. Costopoulos, for petitioner.

Arlin M. Adams and Morey M. Myers, for respondents.

Before CRAIG, President Judge, and COLINS and NEWMAN, JJ.

CRAIG, President Judge.

Petitioner, Mr. Justice Rolf Larsen, asks this court for a preliminary injunction, to enjoin the Senate of Pennsylvania, and its Senate Impeachment Trial Committee, from conducting an impeachment trial against petitioner, set to begin on August 8, 1994.

That preliminary injunction application is part of petitioner's action in equity and declaratory judgment, addressed to the original jurisdiction of this court (coupled with an appeal in the alternative) and filed against the respondents on July 26, 1994.

The present proceedings significantly involve a first-impression question as to whether there can be judicial intervention in advance, to bar the state Senate from proceeding with the impeachment trial, on the basis that violations of constitutional rights are threatened.

Pursuant to a prompt hearing, the factual record has been established. All counsel have cooperated very professionally in establishing a record by the introduction of documentary evidence and by stipulations (Pet.Exh. 11) as to averments of the preliminary injunction application and respondent's affidavits, resulting in the following:

## FINDINGS OF FACT

### Impeachment Proceedings

1. Petitioner Mr. Justice Rolf Larsen served as a justice of the Supreme Court of Pennsylvania from January 1978 at least until June 13, 1994.

2. Respondent Senate of Pennsylvania is the upper house of the Pennsylvania General Assembly.

3. Respondent Senate Impeachment Trial Committee is a select committee of the Senate of Pennsylvania appointed under Rule X of the "Senate Rules of Practice and Procedure

When Sitting on Impeachment Trials" (Pet.Exh. 8), consisting of the following Senators: Stewart J. Greenleaf, Chairman; Robert C. Jubelirer, ex officio; Charles D. Lemmond, Jr.; H. Craig Lewis; Jeanette F. Reibman; Tim Shaffer and Hardy Williams.

4. On May 24, 1994, the Pennsylvania House of Representatives adopted seven articles of impeachment against Mr. Justice Larsen, accusing him of "misbehavior in office" pursuant to Article 6, section 4 of the Pennsylvania Constitution. The articles of impeachment were exhibited to the Senate on June 6, 1994, and were incorporated in the Senate's Writ of Impeachment Summons (Pet.Exh. 3). The reception of evidence, before the Senate Impeachment Trial Committee, is set to begin on August 8, 1994.

5. The Senate of Pennsylvania appointed the Senate Impeachment Trial Committee to receive evidence and take testimony. The petition for review, as filed in this case, raises the constitutional questions discussed below.

6. At a pre-trial conference on June 30, 1994, before the Senate Impeachment Trial Committee, Mr. Justice Larsen filed and argued an omnibus pre-trial motion (Pet.Exh. 4) which sought to dismiss the articles of impeachment on grounds that the Senate lacks subject matter jurisdiction, given Mr. Justice Larsen's removal from office; that double jeopardy principles preclude trying Mr. Justice Larsen in view of his removal from office; that the House of Representatives wrongly impeached Mr. Justice Larsen under an unconstitutional definition of "misbehavior in office"; and that the articles failed to state an impeachable offense. Mr. Justice Larsen also asked that the full Senate consider the pretrial motions, that the full Senate hear the trial, that he be granted "open-file" discovery, and that he be reimbursed for attorney's fees and costs.

7. By letter dated July 1, 1994 (Pet.Exh. 5), the Senate Impeachment Trial Committee advised petitioner and Representative Frank Dermody, Chairman of the Committee of House Managers, that the Senate Impeachment Trial Commit-

tee (1) retains jurisdiction, (2) reserves petitioner's motions of June 30 for the determination of the full Senate, and (3) will begin hearings at 11:00 a.m. on Monday, August 8, 1994, with the expectation of concluding on or about Friday, September 9, 1994. With respect to issues raised by the Committee of House Managers, the letter stated as follows

1. The only testimony transcripts to be admitted will be petitioner's testimony before the Judicial Inquiry and Review Board and in *Commonwealth v. Larsen,* CC9313844, Allegheny County Court of Common Pleas;

2. An unstated request raised by the "Committee Managers" is denied;

3. Subject to Item 8 below, the parties are directed to exchange all relevant materials;

4. Witness are to testify in person, but videotaped depositions may be allowed in extraordinary circumstances;

5. Stipulations are urged;

6. Pre-trial motions are due by July 19, with replies in three days;

7. Evidence will be considered under general principles of fundamental fairness, including irrelevancy, materiality and competency;

8. Petitioner is to be provided with all relevant grand jury materials and an inventory of such materials in the possession of the House or Representatives, with petitioner's counsel to have opportunity to request and receive additional items;

9. A second pre-trial conference may be scheduled during the week of July 25, 1994;

10. No more than one examiner per witness will be allowed; and

11. Subpoenas and subpoenas duces tecum will be issued, with requests to be filed no later than July 19, 1994, beyond which date such requests will be granted only for extraordinary circumstances.

## *Other Proceedings*

8. By letter dated July 20, 1994 (Pet.Exh. 10), addressed the same as the above letter of July 1, the Senate Impeachment Trial Committee scheduled a second pre-trial conference for July 27, 1994, to deal with stipulations, subpoenas, exchange of materials, exhibits, time schedules and issues from the July 1 letter. The Committee reaffirmed its decision to start trial at 11:00 a.m. Monday, August 8, 1994, and to proceed thereafter from 9:00 a.m. to 5:00 p.m. on weekdays, holding hearings on Saturdays if necessary.

9. The Supreme Court of Pennsylvania, by order dated October 18, 1993, No. 127 Judicial Administration Docket, noting criminal proceedings instituted against Mr. Justice Larsen, relieved him from all responsibilities as a justice (Pet.Exh. 6).

10. The Pennsylvania Court of Judicial Discipline, by order of June 3, 1994, ordered the suspension of Mr. Justice Rolf Larsen without pay from the date of the order and until further order of that court. (Pet.Exh. 7).

11. In the Court of Common Pleas of Allegheny County, at No. CC9313844, an order of Court dated June 13, 1994, by Judge W.T. O'Brien (Pet.Exh. 1) further sentenced Mr. Justice Larsen, defendant, as follows:

NOW, this 13th day of June 1994, pursuant to Article VI, Section 7 of the Pennsylvania Constitution, the defendant, having been convicted of an infamous crime, is hereby removed as a justice of the Supreme Court of Pennsylvania, effective immediately.

12. In the case resulting in the order described in Finding No. 10 above, at further proceedings on July 5, 1994, the record shows that the trial judge, with respect to the appeal of that conviction to the Superior Court, granted a stay of the probation and community service aspects of the sentence imposed upon petitioner but, with respect to the removal from office contained in the order at Finding No. 8 above, no stay was requested or granted. (Pet.Exh. 2).

13. As indicated by published report of July 8, 1994, (Pet.Exh. 9) Pennsylvania Governor Robert Casey has appointed a seven-member Appellate Court Nominating Commission to recommend to him the names of candidates for appointment by him to fill two appellate court positions, including the position of Mr. Justice Larsen on the Pennsylvania Supreme Court, and a vacancy on the Commonwealth Court to occur on August 31, 1994.

### Affidavits of Respondents

14. With respect to affidavit of Mark R. Corrigan, Secretary of the Senate of Pennsylvania (Resp.Exh. A), it is stipulated that the affiant, if called to testify, would testify as follows:

a. Two of the senators intending to retire at the end of the current legislative session, November 30, 1994, are members of the Senate Impeachment Trial Committee;

b. Twenty-five seats in the Senate of Pennsylvania are scheduled for election in the November 1994 General Election;

c. The Senate Chamber, extensively reconfigured for the impeachment trial, is scheduled to be used by the Senate Impeachment Trial Committee from August 8, 1994 to September 9, 1994; and

d. The Senate of Pennsylvania is currently in recess and expected to be adjourned until September 19, 1994.

15. The affidavit of A.L. Stockslager, Executive Director of the Pennsylvania Legislative Data Processing Center (Resp.Exh. B), is stipulated to constitute testimony which the affiant would give if called to testify, as follows:

(a) In November of 1992 the Senate passed 86 bills, and the General Assembly passed and transmitted to the Governor 117 bills;

(b) In November of 1990, the Senate of Pennsylvania passed 71 bills, and the General Assembly passed and transmitted to the Governor 110 bills;

(c) In November of 1988, the Senate of Pennsylvania passed 69 bills, and the General Assembly passed and transmitted to the Governor 80 bills.

## QUESTIONS PRESENTED

1.   Does this case against the Senate involve justiciable questions such that this court can issue a preliminary injunction to enjoin the proposed impeachment trial proceedings pending final judicial determination of the constitutional questions raised by petitioner?

2.   Is the impeachment trial of petitioner contrary to the Pennsylvania Constitution on the ground that the petitioner is no longer a civil officer subject to removal by the Senate?

3.   Does an impeachment trial to remove the petitioner violate constitutional prohibitions against double jeopardy on the ground that petitioner has already been removed from office?

4.   Do the Articles of Impeachment presented by the Pennsylvania House of Representatives and adopted by the Senate, rest upon an unconstitutional definition of an impeachable offense?

5.   Has the Senate acted contrary to state and federal constitutions by delegating to a Senate committee the functions of conducting the impeachment trial, receiving evidence and then reporting a certified copy of a transcript of the proceedings and testimony to the full Senate, for its decision as to petitioner's pre-trial motions, as well as upon the ultimate matter of removal from office?

6.   Have the Senate and Senate Impeachment Trial Committee violated petitioner's constitutional rights of due process by failing to grant additional time for preparation as requested?

7.   Has the Senate Impeachment Trial Committee violated petitioner's constitutional rights to a fair trial and effective assistance of counsel by refusing to rule upon petitioner's request for payment of attorney's fees, expenses and costs?

8. Is the petitioner entitled to the requested preliminary injunction relief, staying the impeachment trial pending final decision of this case, on the basis that petitioner's right to relief is clear, the alleged wrong is manifest, the status quo can be restored by injunction, that greater injury will occur from refusing the injunction than from granting it, and that such relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages?

## ANALYSIS

Analysis of the above issues can appropriately be prefaced with (1) citation of the principles governing the issuance of a preliminary injunction, which is the sole relief sought and potentially available at this juncture, and (2) quotation of the Pennsylvania constitutional provisions governing removal from office by impeachment and trial thereof.

This court agrees with the valid statement in petitioner's brief of the prerequisites which must all be satisfied for the grant of a preliminary injunction. Such relief must be necessary to prevent immediate and irreparable harm not compensable by damages. Greater injury must occur from refusing the injunction than from granting it. The injunction must be such as will restore the parties to the status quo ante. And the alleged wrong must be manifest, and the plaintiff's legal right to relief must be clear. *Shenango Valley Osteopathic Hospital v. Department of Health*, 499 Pa. 39, 451 A.2d 434 (1982).

Also, at the outset, recitation of the provisions of the Pennsylvania Constitution governing impeachment and removal of officers may be helpful for reference, and perhaps particularly so when coupled with federal constitutional provisions on the same subject, in that both state and federal precedents have been cited by counsels' briefs.

***Power of Impeachment:*** Pa. Const. Art. VI, § 4 provides: "The House of Representatives shall have the sole power of impeachment." U.S. Const. Art. I, § 2[5]: "The House of

Representatives ... shall have the sole Power of Impeachment."

*Trial of Impeachments:* Respective provisions are as follows:

Pa. Const. Art. VI, § 5 provides:

All impeachments shall be tried by the Senate. When sitting for that Purpose the Senators shall be upon oath or affirmation. No person shall be convicted without the concurrence of two-thirds of the members present.

U.S. Const. Art. I, § 3[6] provides:

The Senate shall have the sole Power to try all Impeachments. When sitting for that Purpose, they shall be on Oath or Affirmation.... And no person shall be convicted without the concurrence of two thirds of the members present.

*Officers Liable To Impeachment:* The provisions governing the scope of impeachment follow. Pa. Const. Art. VI, § 6 provides:

The Governor and all other civil officers shall be liable to impeachment for any misbehavior in office, but judgment in such cases shall not extend further than to removal from office and disqualification to hold any office, trust or profit under this Commonwealth. The person accused, whether convicted or acquitted, shall nevertheless be liable to indictment, trial, judgment and punishment according to law.

U.S. Const. Art. I, § 3[7] provides:

Judgment in Cases of Impeachment shall not extend further than to removal from Office and disqualification to hold and enjoy any Office of honor, Trust, or Profit under the United States: But the Party convicted shall nevertheless be liable and subject to Indictment, Trial, Judgment, and Punishment, according to Law.

In addition, § 7 of Art. VI of the Pennsylvania Constitution, in its first sentence, provides:

All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be

removed on conviction of misbehavior in office or of any infamous crime....

With respect to this § 7, reference is made to Finding of Fact No. 11 above, there citing order of the Court of Common Pleas of Allegheny County.

### 1. *Justiciability*

With respect to the position of the Senate, that this impeachment case involves no question subject to judicial review and control, and petitioner's contrary claim, that the issues here are justiciable, non-political, and therefore are subject to adjudication and direction by the judicial branch, our most pertinent guidance is in the holding of *Dauphin County Grand Jury Investigation Proceeding (No. 2)*, 332 Pa. 342, 2 A.2d 802 (1938).

In that case, where the grand jury functions of the courts and the impeachment functions of the legislature were in conflict, the trial court, in a grand jury proceeding, had issued an order prohibiting certain witnesses from testifying before a legislative investigating committee and also impounding and restricting documentary evidence from being released to that committee.

The Supreme Court vacated and set aside the trial court order on the ground that the court had no power to engage in such a direct interference with the impeachment function of the legislature.

After quoting the impeachment provisions of the Constitution—in the *Dauphin County* case, relating to the power of impeachment by the House of Representatives—the Supreme Court stated:

Therefore, the courts have no jurisdiction in impeachment proceedings and no control over their conduct, so long as actions taken are within constitutional lines.... The courts cannot stay the legislature and the witnesses named are subject to call by the legislative committee at any time.

332 Pa. at 345, 2 A.2d at 803.

In a related aspect of that case, the Supreme Court refused a petition of the House of Representatives requesting a writ of

prohibition to restrain the trial court from proceeding with the grand jury investigation ordered by the court. The Supreme Court pointed out that the criminal prosecution functions of the judiciary system are immune from interruption, prohibition or interference by the legislature, just as the legislative functions are similarly free from judicial interference. (332 Pa. at 356, 2 A.2d at 808.)

Petitioner here understandably stresses that, when our Supreme Court stated that "the courts have no jurisdiction in impeachment proceedings and no control over their conduct," this decision added the qualification that such result pertains "so long as actions taken are within constitutional lines."

Here the respondents, also understandably, rely upon *Nixon v. U.S.*, — U.S. ——, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993), which held that the question of having evidence in a federal impeachment trial received by a Senate committee rather than by the full Senate was a nonjusticiable question. However, study of the United States Supreme Court's opinion leads us to recognize that nonjusticiable cases do not come already labeled with a "Keep Off" sign to keep the courts at a distance. The federal Supreme Court cited *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962) for the principle that nonjusticiability depends upon

a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it. . . .

It went on to state that the courts must, in the first instance, interpret the text in question in order to determine whether and to what extent the issue has been so textually committed. (— U.S. at ——, 113 S.Ct. at 735)

The opinion in *Nixon* recognized that the United States Supreme Court did have subject matter jurisdiction over the case. The Supreme Court opinion proceeded to acknowledge that the courts possess power to review legislative or executive action that transgresses identifiable textual limits. That judicial responsibility is "a delicate exercise in constitutional

interpretation" and is "a responsibility of this Court as ultimate interpreter of the Constitution." (—— U.S. at ——, 113 S.Ct. at 740).

*Sweeney v. Tucker*, 473 Pa. 493, 375 A.2d 698 (1977), did review the expulsion of a member of the state House of Representatives on a claim of due process rights violation. Although our Supreme Court acknowledged that the question of justiciability was a close one, the court nevertheless concluded that a judicial review of such a constitutional matter was not beyond the reach of the courts.

Petitioner stresses a quotation from the *Sweeney* opinion stating:

We conclude, however, that the Pennsylvania Constitution should be construed, when possible, to permit state court review of legislative action alleged to be unconstitutional. (473 Pa. at 520–521, 375 A.2d at 710–711).

Similarly, petitioner looks to *Zemprelli v. Daniels*, 496 Pa. 247, 436 A.2d 1165 (1981), in which our Supreme Court reviewed, in the nature of quo warranto, the confirmation of certain gubernatorial appointments by the Senate, holding that the question was not political and was justiciable.

Recently in *Jubelirer v. Singel*, 162 Pa.Commonwealth Ct. 55, 638 A.2d 352 (1994), this court reviewed the order of seating newly elected senators in the Senate and whether or not a senator-elect was disqualified from voting on his own seating, although we also concluded that the actual voting upon seating was immune from suit under the Speech and Debate Clause.

However, from a review of the foregoing cases, it is clear that where the courts have undertaken to examine legislative actions as justiciable questions, the Pennsylvania Supreme Court and this court were *reviewing actions already theretofore taken* by the processes of the legislative body.

The case before us is unique and entirely without precedent, in that petitioner asks that we exercise a prior restraint upon the Senate and the committee, its instrumentality, by (1) directing who shall try and how the trial shall be conducted,

(2) mandating rulings on pre-trial motions and otherwise, and (3) prohibiting any action by the Senate on the subject, pending final resolution of this case.

With that significant characteristic of these issues in mind, we proceed to examine the claims, to determine if there is any basis for equitable relief.

## 2. Applicability of Legislative Impeachment After Judicial Action On Removal From Office

Petitioner first relies upon the provisions of the Pennsylvania Constitution quoted above, stating in section 6 of Art. VI that all "civil officers shall be liable to impeachment," and also stating in section 7 that "[a]ll civil officers ... shall be removed on conviction of misbehavior in office or of any infamous crime." As stated in the findings above, Mr. Justice Larsen is presently under sentence of a trial court, by order of June 13, 1994, in addition to other penalties following conviction, removing him from office as a justice of the Supreme Court, effective immediately.

For confirmation of the claim that the judicial office of Mr. Justice Larsen is presently vacant, petitioner has pointed to the July 8, 1994, report that the Governor has appointed an Appellate Nominating Commission to recommend persons for appointment to fill two appellate court positions, including a position on the Pennsylvania Supreme Court, presumably that of Mr. Justice Larsen, and also a vacancy on the Commonwealth Court. (Pet.Exh. 9). However, such action by the Governor does not represent either a factual or legal confirmation as to the existence of a present vacancy, as is demonstrated by the fact that the early July appointment of the nominating commission relates also to the Commonwealth Court vacancy not scheduled to occur until later, on August 31, 1994.

Petitioner argues, in referring to sections 6 and 7 of the Constitution's Article VI, that the Pennsylvania Supreme Court has suggested that the two modes of removal are mutually exclusive by stating that "public officials are removable only after their guilt is established *either* in impeachment

proceedings *or* 'on conviction of misbehavior in office or of any infamous crime.'" *In re: Kline Township School Directors,* 353 Pa. 91, 97, 44 A.2d 377, 380 (1945). (Emphasis by Petitioner.) However, the Supreme Court in that case was not dealing with the relationship between removal by impeachment as compared to removal on conviction of a crime. It was dealing only with the question of whether a school director could be removed from office by a court in a civil action as distinguished from a criminal prosecution in court.

Although it is true that the action of the common pleas court, now on appeal to the Superior Court, has not been stayed, this court cannot conclude that the judicial action in a criminal case by a trial judge can oust legislative jurisdiction over petitioner which had attached earlier. Reference to the findings of fact shows that the House of Representatives adopted the Articles of Impeachment on May 24, before the removal sentence by the trial judge. Although the legislative process had, at that point, produced only the impeachment charge, it is inconceivable that an action by a member of the judicial branch could automatically eliminate an ongoing legislative impeachment process.

Section 6 of Art. VI of the Pennsylvania Constitution, quoted above, states that a person accused by impeachment "shall nevertheless be liable to indictment, trial, and judgment and punishment according to law," thus indicating that impeachment does not oust any aspect of the sanctions which can be imposed by criminal prosecution in the courts. The converse is also true—that judicial action in the course of criminal prosecution and sentencing cannot derail a legislative impeachment process already underway.

### 3. Double Jeopardy

█ Petitioner refers to *Matter of Chiovero,* 524 Pa. 181, 570 A.2d 57 (1990) for the proposition that a jurist's right to hold office is safeguarded by constitutional protections, including all "constitutional rights, powers, privileges and immunities of an accused known to our civil and criminal jurisprudence." (570 A.2d at 60).

However, neither the applicability of constitutional safeguards to possession of public office nor a characterization of the impeachment process as quasi-criminal leads to any logical conclusion that continuation of a prior impeachment proceeding, after a judicial sentence of removal from office, amounts to a violation of Pa. Const. Art. I, § 10 that

No person shall, for the same offense, be twice put in jeopardy of life or limb....

As noted above, Pa. Const. Art. VI, § 6 makes clear that the impeachment process does not displace liability to criminal prosecution, thus establishing that the two processes are distinctly separate. Thus impeachment can never be construed as a charge identical to the "infamous" criminal offense as to which there may have been a conviction in criminal court.

Moreover, as respondents point out, a significant distinction between criminal convictions and removals by impeachment is that criminal convictions may be pardoned by the Governor, and a pardon wipes out all legal disabilities resulting from the conviction. *Commonwealth v. C.S.*, 517 Pa. 89, 92, 534 A.2d 1053, 1054 (1987). Therefore, a pardon as to the criminal conviction, as well as a reversal of the sentence, could negate the application of the criminal case to petitioner's public office, whereas a removal from office by the impeachment process is not subject to negation by an executive pardon.

Accordingly, the constitutional protection against double jeopardy is not applicable.

### 4. Absence of an Impeachable Offense

■ Petitioner, after pursuing the double jeopardy argument on the basis that the impeachment proceedings in the criminal prosecution subjects him twice to jeopardy for the same "offense", then seems to pursue an alternative argument that the impeachment charges by the House of Representatives do not amount to a constitutionally valid basis for impeachment because they do not, at least in some respects, amount to charges of criminal offenses.

Petitioner refers to the Preparatory Committee Report on the Judiciary, for the Pennsylvania Constitution Convention, 1967–1968, pp. 158–160 to support the point that "misbehavior in office"—the § 6 statement of impeachable offense—should be interpreted as referring only to the common law crime of misconduct in office, quoting the cited portion of the report as follows:

The common law of misconduct in office, variously called misbehavior, misfeasance, or misdemeanor in office, means either the breach of a positive statutory duty or the performance by a public official of a discretionary act with an improper or corrupt motive.... The multiple usage of the term "misbehavior in office" appears to be a codification of the common law offense.

However, it is impossible to perceive how the impeachment charges in this case depart from even that strict definition of impeachable offense, which finds no support in judicial precedents. Briefly summarized, the charges are as follows:

1. Petitioner tracked petitions for allowance of appeal to the Supreme Court, for special handling, because friends and political contributors were involved as attorneys;

2. Petitioner engaged in ex parte communications and exchanges with a friend and political supporter who was the attorney in two cases in which petitions for allowance of appeal were pending before the Supreme Court;

3. Petitioner made false statements to the grand jury;

4. Petitioner communicated ex parte with a trial judge to influence the outcome of a trial court proceeding;

5. In litigation pursuant to his reprimand by the Supreme Court, petitioner made false statements under oath;

6. Petitioner violated prescription drug laws.

Even if the definition of "misbehavior in office" for impeachment purposes, quoted above from the writings of the Constitutional Convention Preparatory Committee, had the force of law, review of the impeachment charges leads to the conclusion that they involve breaches of "positive statutory duty"

and also "performance of discretionary act with improper or corrupt motive."

## 5. Reception of Impeachment Trial Evidence by Committee

■ Petitioner has objected to the application, in this impeachment trial, of a portion of the Pennsylvania Senate's *Rules of Practice and Procedure In The Senate When Sitting On Impeachment Trials.* Part X of those rules provides that the President, or the President Pro Tem, of the Senate may appoint a committee of senators, no more than half of whom are to be from the same political party, "to receive evidence and take testimony at such times and places as the committee may determine." Part X, par. 1. Paragraph 3 of the same Part X of the Rules provides that:

> The committee so appointed shall report to the Senate in writing a certified copy of the transcript of the proceedings and testimony had and given before such committee, and such report shall be received by the Senate and the evidence so received and the testimony so taken shall be considered to all intents and purposes, subject to the right of the Senate to determine competency, relevancy, and materiality, as having been received and taken before the Senate, but nothing herein shall prevent the Senate from sending for any witness and hearing his testimony in open Senate, or by order of the Senate having the entire trial in open Senate.

Petitioner notes that Pa. Const. Art. VI, Section 5 provides that:

> All impeachments shall be tried by the Senate. When sitting for that purpose the Senators shall be upon oath or affirmation. No person shall be convicted without the concurrence of two-thirds of the members present.

Petitioner therefore contends that the power of conducting an impeachment trial is committed by the Constitution to the entire Senate and cannot be delegated to a committee.

However, this precise question was first soundly examined and decided otherwise in *Hastings v. U.S. Senate, Impeachment Trial Comm.*, 716 F.Supp. 38 (D.D.C.1989), *affirmed without opinion*, 887 F.2d 332 (D.C.Cir.1989). That court considered provisions of Rules of the United States Senate very similar to the Pennsylvania Rules. The federal Senate rules also permit the appointment of a committee to receive evidence, take testimony, and report to the Senate in writing, with a transcript of the proceedings and testimony. The committee, whether federal or state, does not make any decision or recommendation with respect to the result of the impeachment trial. Having received the evidence, it relays evidence to the entire state or federal Senate, as the case may be, and the decision is made by the entire Senate in each case.

On this point, the Federal District Court concluded:

Rule XI specifically reserves to the Senate as a whole the right to hear directly the testimony of any or all witnesses it desires at any time prior to the impeachment vote.

Insofar as Judges Hastings and Nixon contend that they each have an individual right to an impeachment tried before the full Senate and that a federal district court may supervise the Senate's procedures for impeachment, they are mistaken. Article I, Section 8 provides that "The Senate shall have the sole power to try all impeachments," and Section 5 of the same Article states that "each House may determine the Rules of its Proceedings." It is crystal clear that impeachment proceedings are wholly committed to Congress under the Constitution. Thus a classic political question is presented under *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962). Absent evidence that the Senate is violating the Constitution, the Court should stay its hand.

The use of a committee to develop facts is not a new idea. This was the practice of the House of Lords in the early part of the 17th Century, and the possibility of using a committee in the process was first proposed in the Senate as early as 1904. Thereafter, the committee approach was debated from time to time. Some urged use of a committee

because as few as three Senators had been present during impeachment trials before the full body, which proceeded even in the absence of a quorum. In recent years Senators have relied heavily on written materials developed in their absence when an impeachment matter came to a vote. (716 F.Supp. at 40.)

The conclusion of this court must be the same. The state and federal constitutional provisions are nearly identical. Precisely because our state constitution commits the impeachment trial function exclusively to the Senate, the courts cannot intervene with respect to procedure internal to the legislative body. In the Pennsylvania Senate, as in all legislative bodies of the states and nation, commitment of particular functions to a committee is standard practice, with the ultimate decision upon the proposed law or other committee product being reserved to action by the entire Senate body. That pattern is preserved by the impeachment trial rules here, and this court cannot declare to be unlawful a procedure which the Senate has constructed within the borders of its constitutional discretion to do so.

The same principle must apply with respect to resolution of the other issues which the petitioner raises with respect to the procedure employed by the Senate Impeachment Trial Committee. Petitioner complains that the committee has refused to rule upon certain pre-trial motions at the outset of trial and there has been no ruling on them by the full Senate itself. Petitioner's pretrial motions (1) request dismissal on the basis of the other legal issues discussed in this opinion, (2) requests open-file discovery, and (3) requests reimbursement for legal fees and costs.

All of these issues are within the exclusive power of the Senate to conduct impeachment trial proceedings and cannot be invaded by the courts.

Although the United States Supreme Court in *Nixon* held that delegation of the impeachment trial function by the United States Senate to a committee under its rules was a nonjusticiable question, the United States Supreme Court

proceeded to examine the words of U.S. Const. Art. I, § 3[6], containing wording similar to the Pennsylvania constitutional provisions on impeachments, as quoted first above. The United States Constitution states that the U.S. Senate shall have the "sole Power to try all Impeachments". The Pennsylvania Constitution provides that "All impeachments shall be tried by the Senate".

Chief Justice Rehnquist, for the United States Supreme Court, points out that the various meanings of the word "try" are not limited to the matter of receiving evidence in the "conduct of a trial." (—— U.S. at ——, 113 S.Ct. at 736). The *Nixon* opinion concluded that the use of the word "try" lacks sufficient precision to afford any judicially manageable standard of review which would permit the courts to question the procedures adopted by the Senate, effectuating a division of labor within the Senate.

Petitioner relies upon the decision of the Pennsylvania Supreme Court in *Marshall Impeachment Case*, 363 Pa. 326, 69 A.2d 619 (1949) in which the Pennsylvania Supreme Court held that every member of the Philadelphia City Council had to participate as the court of impeachment. However, that opinion deals with the special statutory context of provisions for municipal impeachment, not applicable here. Those proceedings were governed by the now-repealed Act of June 25, 1919, P.L. 581, § 9(e) *formerly* 53 P.S. § 3005, which specifically provided that the City Council of Philadelphia "shall be assembled ... in special and open session, as a court of impeachment, and the members shall be severally sworn to try and decide" the impeachment. No such detailed specification for constituting the hearing body is present in the constitutional sections governing this case.

The state constitution gives the state Senate as much discretion as the federal constitution grants. This court cannot interfere with the Senate's discretionary employment of the committee.

Although petitioner has objected to the role of the committee in receiving evidence, petitioner also objected to the fact

that the committee has nevertheless deferred to the full Senate with respect to ruling upon certain of petitioner's pretrial motions.

Petitioner has by those pre-trial motions, requested additional time for preparation and has also requested commitment to reimburse him for legal expenses. The committee reserved those questions for ultimate decision by the full Senate.

Of course, petitioner understandably requests additional preparation time before the commencement of the reception of evidence by the committee. However, under the rules, Rule X, par. 3, allows the Senate itself to take additional testimony, that is, to extend the taking of testimony if the reception of evidence by the committee is shown to be inadequate.

Similarly, petitioner obviously would prefer to have assurance of reimbursement of legal expenses before proceeding with the presentation of evidence. However, that issue is obviously a substantive question in support of which petitioner's brief is unable to offer any authorities. The reference to the statement in *Hastings v. U.S. Senate Impeachment Trial Committee*, 716 F.Supp. 38, 42 (D.D.C.1989), *affirmed without opinion*, 887 F.2d 332 (D.C.Cir.1989), that the United States Senate would be paying the expenses of necessary witnesses for Judge Hastings, neither supplies authority for reimbursement of other types of legal expenses, nor does it indicate that such reimbursement of expenses is mandatory. In fact, the *Hastings* district court, at the same point in the opinion, expressly negated any right of payment to the judge for his legal fees.

## 8. *Criteria For Preliminary Injunction*

The foregoing review leads to the definite conclusion that the petitioner here is unable to demonstrate that the alleged wrong is manifest or that the petitioner's legal right to relief is clear.

Of most significance is our conviction, from study of the impeachment provisions of the Pennsylvania Constitution, that

such process is committed by the Constitution to the Senate of Pennsylvania to an extent which clearly bars the courts from intervening with prior restraint. Impeachment involves an adjudicative process, but one which has been clearly set apart by the Constitution as distinguished from adjudications by the judicial branch of government, regardless of whatever powers the courts may have to interpret actions of the legislative body, by way of review, after they have been taken. As in the case of scrutinizing the constitutionality of statutes themselves, the courts clearly have no power to intervene by injunction in advance of legislative action, any more than a court would have any power to enjoin, in advance, the enactment of a law appearing (to the courts) to be constitutionally invalid.

An order denying the preliminary injunction application must be entered.[1]

## ORDER

NOW, August 5, 1994, pursuant to evidentiary hearing, consideration of briefs and argument, it is ORDERED that petitioner's application for special relief in the nature of a preliminary injunction is denied.

---

1. The respondents who are individual members of the Senate have also argued that they are immune from suit under the Speech and Debate Clause and, that this action should therefore be now dismissed as to them. This court will not rule on that matter at this juncture, which should be considered pursuant to a motion separate from the preliminary injunction proceedings.