Merrimack
No. 2001-580

SHERMAN D. HORTON, JR. & a.

v.

PHILIP T. MCLAUGHLIN, ATTORNEY GENERAL FOR THE STATE OF NEW
HAMPSHIRE, AND THE STATE OF NEW HAMPSHIRE

Argued: November 1, 2002
Opinion Issued: February 18, 2003

*Nixon, Raiche, Manning, Casinghino & Leach, P.A.*, of Manchester (*Kevin M. Leach* and *David L. Nixon* on the brief, and *Mr. Nixon* orally), for the petitioners.

*Philip T. McLaughlin,* attorney general (*Nancy J. Smith,* senior assistant attorney general, on the brief and orally), for the respondents.

PER CURIAM. The petitioners, Sherman D. Horton, Jr., David A. Brock, and John T. Broderick, Jr., appeal an order of the Superior Court (*Fitzgerald,* J.) dismissing their petition for declaratory judgment and other relief in which they sought reimbursement from the State of New Hampshire for legal fees and costs incurred during the course of their impeachment proceedings. We affirm.

The following facts are relevant to the disposition of this appeal. At all times pertinent to this matter, the petitioners were members of this court: petitioner Brock as Chief Justice, and petitioners Horton and Broderick as Associate Justices. On April 13, 2000, the New Hampshire House of Representatives adopted a resolution directing the House Judiciary Committee to investigate whether cause existed to impeach the petitioners. The Committee concluded its investigation on July 12, 2000. Consistent with the Committee's findings and recommendations, the full House voted to present articles of impeachment against Chief Justice Brock to the New Hampshire Senate. The House also approved resolutions providing that cause did not exist to impeach Associate Justices Horton and Broderick. On October 10, 2000, following a trial, the Senate voted to acquit Chief Justice Brock of the charges against him.

During the course of the impeachment proceedings, Chief Justice Brock and Associate Justice Horton requested representation from the Attorney General of New Hampshire under RSA 99-D:2. The Attorney General denied their request, concluding that RSA 99-D:2 did not apply because impeachment proceedings were involved. In the same vein, following the conclusion of the impeachment proceedings, all three Justices unsuccessfully sought reimbursement of their legal fees under RSA 99-D:2.

The petitioners then filed a petition in superior court, seeking a ruling that they were entitled to reimbursement of attorney's fees incurred as a result of successfully defending themselves against impeachment. The

petitioners relied on RSA 99-D:2, the common law, and the state and federal constitutions. The superior court ruled that the issue was nonjusticiable and dismissed the petition.

We agree with the superior court's ruling on justiciability, and hold that the issue in this case is a nonjusticiable political question.

"[T]he political question doctrine is essentially a function of the separation of powers, ... existing to restrain courts from inappropriate interference in the business of the other branches of Government, ... and deriving in large part from prudential concerns about the respect we owe the political departments. . . ." *Nixon v. United States*, 506 U.S. 224, 252-53 (1993) (Souter, J., concurring) (quotations and citations omitted). In the New Hampshire Constitution, the principle of separation of powers is espoused in Part I, Article 37:

> In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity.

This doctrine "prohibits each branch of government from encroaching on the powers and functions of another branch." *Petition of the Judicial Conduct Comm.*, 145 N.H. 108, 109 (2000) (hereinafter *"Petition of JCC"*) (quotations and citations omitted).

The principle of justiciability prevents judicial violation of the separation of powers by limiting judicial review of certain matters that lie within the province of the other two branches of government. *See id.* at 109, 111-12. "A controversy is nonjusticiable — *i.e.*, involves a political question — where there is a textually demonstrable constitutional commitment of the issue to a coordinate political department . . . ." *Id.* at 111 (quotations and citations omitted). Accordingly, if the text of the constitution has demonstrably committed the disposition of a particular matter to a coordinate branch of government, a court should decline to adjudicate the issue to avoid encroaching upon the powers and functions of that branch.

"[T]he impeachment of judges is demonstrably committed to the legislative branch by Part II, Article 17 of the New Hampshire Constitution." *Id.* at 111-12. Indeed, impeachment is "exclusively a legislative prerogative." *In Re Mussman*, 112 N.H. 99, 100 (1972) (citation omitted). Specifically, Part II, Article 17 of the New Hampshire Constitution provides that "[t]he house of representatives *shall* be the

grand inquest of the state; and *all* impeachments made by them, *shall* be heard and tried by the senate." (Emphasis added.) Correlatively, "[t]he senate *shall* be a court, with *full power* and authority to hear, try and determine, *all* impeachments made by the house of representatives . . . ." N.H. CONST. pt. II, art. 38 (emphasis added).

■ The legislature has full authority to establish all rules, regulations and laws necessary and proper to carry out its constitutional mandate. *See Petition of JCC*, 145 N.H. at 112; *see also Davis v. Sch. Dist.*, 44 N.H. 398, 404 (1862); *cf.* N.H. CONST. pt. II, arts. 22, 37 (each legislative chamber makes its own procedural rules). Thus, the legislature's exclusive power to conduct impeachment proceedings necessarily carries with it the full authority to make, implement and interpret rules pertaining to impeachment. *Petition of JCC*, 145 N.H. at 112 (challenge to delegated legislative authority to make rules governing impeachment is nonjusticiable absent "unusual circumstances").

■ As an instance of this general principle, it is the legislature's prerogative to make, implement and interpret rules pertaining to the provision of legal counsel for judges and other officials who are subject to impeachment, as well as rules pertaining to the reimbursement of their legal fees. *See Hastings v. United States Senate*, 716 F. Supp. 38, 40, 42 (D.D.C.), *aff'd without opinion*, 887 F.2d 332 (D.C. Cir. 1989) (Senate alone determines procedure on attorney's fees for judges in impeachment proceedings); *Mecham v. Arizona House of Representatives*, 782 P.2d 1160, 1161 (Ariz. 1989) (court has no authority to award attorney's fees incurred during impeachment proceedings absent constitutional or statutory authorization); *Larsen v. Senate of Pennsylvania*, 646 A.2d 694, 704 (Pa. Commw. Ct. 1994) (request for attorney's fees and costs exclusively within power of Senate and cannot be invaded by courts). It is likewise the legislature's prerogative to entertain requests for the same. *See Hastings*, 716 F. Supp. 38; *Mecham*, 782 P.2d 1160; *Larsen*, 646 A.2d 694; *cf. Petition of JCC*, 145 N.H. 108. Indeed, to allocate to the legislature plenary authority over impeachment without including the ancillary power of awarding attorney's fees pursuant thereto would impose an intent otherwise not apparent from the clear language of the constitution.

Notwithstanding the petitioners' attempt to distinguish the foregoing cases based on differences in circumstances, these cases support our holding that the issue of granting judges attorney's fees for defending against impeachment proceedings belongs in the legislature and not in the courts.

██ The court is also not persuaded by the petitioners' argument that the timing of their request, that is, the post-impeachment nature of the request, exempts it from application of the political question doctrine. Regardless of the timing of the request, the petitioners incurred the fees during the course of impeachment proceedings over which the legislature has exclusive authority. It would be no less a violation of the separation of powers for the court to address the issue after the fact than it would be if the court had addressed the issue before or during the impeachment process.

Our conclusion that the constitution commits to the legislature exclusive authority over attorney's fees incurred during impeachment proceedings does not end the inquiry into justiciability, however. "The court system is available for adjudication of issues of constitutional or other fundamental rights." *Petition of JCC*, 145 N.H. at 111. Recognizing this principle, this court has acknowledged there could be "unusual circumstances that might justify a more searching review of impeachment proceedings." *Id.* at 112 (citing *Nixon*, 506 U.S. at 253); *see also Hastings*, 716 F. Supp. at 40 ("Court should stay its hand" absent evidence of constitutional violation).

Here, the petitioners do not claim that legislative action or inaction threatened the integrity of the impeachment investigation or trial, or that the legislature acted beyond the scope of its constitutional authority such that the consequences to the state are so great as to merit judicial interference in the legislature's authority to regulate its impeachment process. *See Petition of JCC*, 145 N.H. at 112; *see also Nixon*, 506 U.S. at 253. Instead, relying on *Town of Littleton v. Taylor*, 138 N.H. 419 (1994), *Foster v. Hudson*, 122 N.H. 150 (1982), *Silva v. Botsch*, 121 N.H. 1041 (1981), and principally, *King v. Thomson*, 119 N.H. 219 (1979), the petitioners argue that they have a common law right, enforceable by the court, to reimbursement of attorney's fees under the "public trust" doctrine. These cases, however, are inapposite to the present circumstances, involving, as they do, the interpretation of *statutes* governing an official's right to remain in office.

With respect to *King* in particular, the court awarded attorney's fees to an executive official who defeated a statutory removal action by the executive branch. The petitioners argue by analogy that the court may award attorney's fees to a judicial official who defeated an impeachment, even though the impeachment process is constitutionally committed to the legislative branch. We do not agree with the analogy.

*King* presents issues of statutory interpretation and common law. The specific principle in *King* is that executive officials should not bear the cost of opposing removal when such opposition serves an important state interest. *King*, 119 N.H. at 221. To that end, "[s]everal statutes

demonstrate a legislative intention that counsel fees and expenses of a State official who defends a State interest must be paid by the State." *Id.* at 221-22.

■ The principle in *King* is inapplicable here. In *King*, the court found statutory support for a legislative intention to award attorney's fees to a state executive who withstood removal attempts by the executive branch, whereas in the present case, there is no statutory support for a legislative intention to award such fees to a state judge who withstands impeachment by the legislature. *Cf. id.* Additionally, in contrast to *King*, there is no evidence in this case of other legislative action indicating such an intention. *Cf. id.* at 220-21 (recognizing legislative bill authorizing appropriation for substantial portion of petitioner's attorney's fees). In this context, we cannot find a legislative policy expressed in a statute or otherwise that would support an award of attorney's fees by the court.

The petitioners also argue that their right to equal protection under the state and federal constitutions is implicated under the facts of this case, and therefore the superior court should have granted them a remedy notwithstanding the constitutional commitment of the matter to the legislature. The petitioners assert that because they were denied their attorney's fees, they were treated differently from the public officials typified in *King, Town of Littleton, Foster* and *Silva*.

■ For reasons already discussed, we find that the petitioners are not similarly situated with that class of public officials, who under our statutes and common law precedent may be entitled to seek an award of attorney's fees from the court. The constitutional impeachment process to which the petitioners were subject is fundamentally different from the statutory removal processes involved in those cases where courts have awarded attorney's fees to public officials. As the petitioners are not similarly situated with the officials in the aforementioned cases, no equal protection problem is involved. *LeClair v. LeClair*, 137 N.H. 213, 222 (1993). The petitioners, moreover, do not allege they have been treated differently than any other person who is similarly situated, that is, state officials subject to impeachment. Accordingly, we find no constitutional violation that would make the petitioners' claim justiciable.

Finally, we address the petitioners' assertion that the legislative impeachment process as carried out threatens the independence of the judiciary. The petitioners claim that the process affords the legislature the opportunity to threaten or impose financial hardship on individual judges for reasons substantially motivated by grounds other than those set forth in the constitution. To subject a judge to financial hardship in defending himself or herself from impeachment or removal proceedings motivated,

for example, by unpopular decisions could significantly jeopardize the separation of powers doctrine as well as the requirement that a judge act independently. *See Mussman*, 112 N.H. 102-03. On this record, however, we find no such substantive constitutional violation. *Cf. Petition of JCC*, 145 N.H. at 112 ("unusual circumstances" may justify more searching review).

■ In sum, the trial court properly dismissed the petitioners' claim for attorney's fees on justiciability grounds. Absent a constitutional violation, it is inappropriate for the judicial branch to interfere with impeachment issues over which the legislative branch has plenary constitutional authority.

*Affirmed.*

FAUVER and HICKS, JJ., superior court justices, specially assigned under RSA 490:3, and FLYNN and MANIAS, JJ., retired superior court justices, specially assigned under RSA 490:3, concurred; DICKSON, J., retired superior court justice, specially assigned under RSA 490:3, concurred specially.

DICKSON, J., concurring specially. I agree with the majority that the petition should be dismissed, but I disagree with the path they have taken to reach that result. I write specially because in my opinion the doctrine of sovereign immunity precludes the petitioners from suing the State to recover the costs and legal fees they have incurred as a result of the impeachment proceedings against them.

Sovereign immunity is a jurisdictional question. *LaRoche v. Doe*, 134 N.H. 562, 566 (1991) (sovereign immunity is question of subject matter jurisdiction). Pursuant to this doctrine, the State cannot be sued in its own courts without its consent. *Id.* at 567 ("New Hampshire courts may [not] hear an action where the State Legislature has not vested the courts with subject matter jurisdiction by prescribing the terms and conditions on which it consents to be sued . . . ." (quotations, brackets and citation omitted)); *see also In Re Estate of Raduazo*, 148 N.H. 687, 692 (2002) (State must give permission for litigant to "reach[ ] into the State's pocket"); *Tilton v. Dougherty*, 126 N.H. 294, 297-99 (rule that litigant cannot sue State without consent is first of two sovereign immunity prongs that is "the law of the state"); *Sousa v. State*, 115 N.H. 340, 342 (1975) (referring to history of confusion about sovereign immunity rules). This is subject, of course, to constitutional concerns. *Compare Claremont Sch. Dist. v. Governor*, 144 N.H. 590, 592-95 (1999) (sovereign immunity impliedly waived in award of attorney's fees from State where underlying case involving public's constitutional right to adequate education was properly

before court), *and State Employees Ass'n of N.H. v. Belknap County*, 122 N.H. 614, 621 (1982) ("existence of a right . . . implies the existence of an appropriate remedy for recovering [pursuant thereto]"), *with LaRoche*, 134 N.H. at 566 (sovereign immunity cannot be "waived by conduct or undermined by estoppel" (citation omitted)), *and Pub. Serv. Co. v. State*, 102 N.H. 54, 58 (1959) (sovereign immunity is legislative question court cannot waive even for equitable claim).

In the case before us there is neither consent, nor, as the majority aptly explains, a legitimate question of a constitutional violation. There is, however, a need to protect the citizenry from encroachment upon the public treasury and avoid the disruption of the orderly administration of government. *Raduazo*, 148 N.H. at 692. Stated more bluntly, you cannot vest this court with jurisdiction simply by placing a meritless constitutional tag on a claim for legal fees.

The majority, for reasons unknown to me, has not addressed the issue of jurisdiction. *But see Mosier v. Kinley*, 142 N.H. 415, 423-24 (1997) (jurisdiction is first question court must examine in any case). Rather, they have relied on the proposition that the issue presented is a nonjusticiable political question. Following their reasoning, the matter may well be, and probably is, nonjusticiable. Jurisdiction, however, trumps justiciability. *Id.*

Though judicial restraint is less ubiquitous than desirable, it is no more recondite than in the case before us.

Quite simply, the court lacks subject matter jurisdiction and the case should be dismissed on that ground.